# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SAKEENAH SALAAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0252-LM |
| | ) | |
| JUSTIN FUREY, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE'S FINAL REPORT

Date Submitted: May 23, 2024
Final Report: November 8, 2024

Sakeenah Salam, Wilmington, Delaware; *Pro se Plaintiff.*

Justin Furey, Little Neck, New York; *Pro se Defendant.*

**MITCHELL, M.**

## I.   BACKGROUND[1]

The matter before me relates to the enforceability of a sales agreement between Sakeenah Salaam ("Plaintiff" or "Seller") and Justin Furey ("Defendant" of "Buyer") for the purchase of a condominium located at 5211-Unit Le Parc Dr #3, Wilmington, DE 19809 (hereinafter, the "Property").[2] Plaintiff Salaam seeks to compel Defendant Furey to perform his obligations under the sales agreement and close on the sale of the Property.

### A.   The Sale of the Property

Plaintiff retained Brian Foraker as her real estate agent to assist her with selling the Property.[3] The Property, a condominium, was subject to a monthly condominium association fee.[4]  The seller's disclosures indicated there was a monthly condominium fee but did not provide the amount of the fee.[5] The Property

---

[1] The facts in this report reflect my findings based on the record developed at trial on May 23, 2024. *See* Docket Item ("D. I.") 30. I grant the evidence the weight and credibility I find it deserves. Citations to the trial transcript are in the form "Tr. #." The Plaintiff's Trial Exhibits are cited as "Pl. Ex. ___." The Defendant's Trial Exhibits are cited as "Def. Ex. ___."

[2] D. I. 1.

[3] Tr. 9:19-23.

[4] Pl. Ex. C. (Seller's Disclosures).

[5] *Id.*

listing on Mr. Foraker's website identified the monthly condominium association fee as $542.00 per month.[6]

On October 31, 2022, Plaintiff received the first offer on the Property in the amount of $80,000.00 from the Defendant.[7] Later that same day, Plaintiff received another offer for $90,000.00 with no contingencies, as is, from Olive Rochester (the "Rochester Offer").[8] As a result of the Rochester Offer, Defendant increased his original offer by $5,000.00.[9] The Defendant's final offer was for $85,000.00 cash with no contingencies.[10] Although the Rochester Offer was higher, Plaintiff selected the Defendant's Offer because it was an all-cash offer.[11]

## B. The Sales Agreement

On November 1, 2022, the parties entered into an agreement of sale (the "Agreement") for $85,000.00 with a $5,000.00 deposit due within three days of acceptance.[12] The Agreement reflected a settlement date of December 12, 2022.[13] Three days after executing the Agreement, on November 4th, Defendant paid the

---

[6] Tr. 98:1-5; D. I. 21 (Exhibit O).

[7] Tr. 10:18-20; Pl. Ex. B (Furey's First Offer).

[8] Tr. 12:10-12; Pl. Ex. A (Rochester Offer).

[9] Tr. 12:10-15.

[10] Tr. 12:13-16; Ex. C. (Furey's Second Offer).

[11] Tr. 16:3-21.

[12] Tr. 32:6-10.

[13] Tr. 17:23-24; Exhibit C (Furey's Second Offer).

$5,000.00 deposit.[14] On November 14, 2022, the buyer's settlement attorney sent the seller correspondence congratulating her on entering into the contract for the sale of the Property, and provided her details on additional information that will be needed leading up to closing.[15]

On November 8, 2022, the condominium's resale documents ("Resale Certificate") were sent to the Plaintiff, Defendant, and the seller's transaction coordinator.[16] Additionally, the Resale Certificate was sent via a link in another email from the seller's real estate agent to the buyer's real estate agent on November 14, 2022.[17] The Resale Certificate stated:

> "[t]he selling unit is subject to a common expense assessment as follows: Payments are due on the 1st of each Month in the amount of $813.00"[18] In addition, in paragraph 3 of the resale certificate, it indicated that the selling unit owner had a "current balance DUE in the amount of $44,715.70 – NEXT ASSESSMENT IS DUE 12/01 SO BALANCE WILL CHANGE[.] *REQUEST PAYOFF STATEMENT.*"[19]

---

[14] Tr. 32:10-12; Tr. 93:16-17.

[15] Tr. 33:6-11; D. I. 1 (Exhibit H).

[16] Tr. 27:16-23; Tr. 32:13-24; D. I. 1 (Exhibit D).

[17] Tr. 27:17-24 – 28:1-4; D. I. 1 (Exhibit G).

[18] Tr. 27:16-23; Tr. 32:13-24; D. I. 1 (Exhibit D).

[19] D. I. 1 (Exhibit D).

The condo association fee in the Resale Certificate differed from the fee identified in the realtor's Property listing, which was $542.00 per month.[20]

## C.  The Seller's Disclosures

Paragraph 31 of the Agreement identifies "Addendums" that are incorporated into the Agreement.[21]  One addendum is the Seller's Disclosure of Real Property Condition Report ("Seller's Disclosures").[22] Paragraph 35 of the Agreement states that:

> "This Agreement and any addenda hereto contain the final and entire Agreement between the parties… FAILURE TO MARK OR CHECK A BOX "YES" MEANS BUYER HAS WAIVED THE RIGHT TO INCLUDE THAT CONTINGENCY OR CLAUSE AS PART OF THIS AGREEMENT."[23]

The clause related to the "DUCOIA Resale Certification Form" was not checked or marked "yes".[24] Question 14 inquired into whether there were any unpaid assessments, and the Plaintiff's response was "no." In the "Acknowledgement of Buyer" section of the Seller's Disclosures it states that: "Buyer is relying upon the above report, and statements within the Agreement of Sale, as the representation of

---

[20] Tr. 98:1-5; D. I. 21 (Exhibit O).

[21] Pl. Ex. C (Sales Agreement).

[22] *Id.*

[23] Pl. Ex. C (Sales Agreement, ¶ 35).

[24] *Id.*

the condition of property, and is not relying upon any other information about the property.[25]

### D. The Closing

On December 3, 2022, the Buyer performed a walk-through of the Property.[26] On December 12, 2022, the Seller vacated the Property and put her personal property into storage until she could move into her new home on January 4, 2023.[27] On December 12, 2022, the parties entered into an addendum agreement to move settlement from December 12, 2022 to December 19, 2022.[28] On December 19, 2022, the Seller, her real estate agent, and the closing attorney attended the closing.[29] At closing, the Seller brought a certified check for $49,275.00, which represented the fees she owed to the condominium association.[30] The Seller signed the closing documents and provided keys to the Property.[31]

The Buyer did not attend closing.[32] He claimed to have discovered the $813.00 monthly condominium fee on December 16, 2022, and subsequently

---

[25] *Id.*

[26] Tr. 90:3-5.

[27] Tr. 33:12-15.

[28] D. I. 1 (Exhibit J); Pl. Ex. J-2.

[29] Tr. 18:19-24 – 19:1-7.

[30] Tr. 27:1-8; D. I 1 (Exhibit K).

[31] Tr. 32:2-5; D. I. 1 (Exhibit K).

[32] Tr. 19:12-14.

attempted to withdraw his offer due to the $271.00 discrepancy in the monthly condominium fee.[33] The Buyer's real estate agent estate agent reached out to the Seller's real estate agent on December 20, 2022 requesting seller's deposit back due to the incorrect condominium association fee that was publicly posted.[34] Defendant testified that he could not recall if he received the condominium association fee in advance of the original closing date.[35] The Property was relisted on the market on December 21, 2022.[36]

### E.    This Action

Plaintiff filed a complaint in the Court of Chancery on February 28, 2023, seeking: 1) specific performance of all aspects of the November 1, 2022, sales agreement, 2) repayment of all costs incurred from the delay in the performance of the sales agreement, and 3) court costs and attorney fees.[37]  On September 25, 2023, Plaintiff motioned for default judgment pursuant to Court of Chancery Rule 55 because Defendant had not answered the complaint.[38] Defendant appeared and contested the default judgment motion at the January 5, 2024 hearing and stated his

---

[33] Tr. 91:6-8; D. I. 1 (Exhibit J); D. I. 21.

[34] D. I. 1 (Exhibit L).

[35] Tr. 105:23-24 – 106:1-6.

[36] Tr. 20: 8-16.

[37] D. I. 1.

[38] D. I. 11; Ct. Ch. R. 55.

6

intent to file a response.[39] Five days later, Defendant answered the complaint.[40] On February 1, 2024, the Court scheduled an evidentiary hearing for May 23, 2024, which proceeded as scheduled.[41]

## II. ANALYSIS

A party seeking specific performance of a real estate agreement has the burden to prove their claim by clear and convincing evidence.[42] Clear and convincing evidence "produce[s] in the mind of the fact-finder a firm belief or conviction that the allegations in question are true."[43] For the Court to order specific performance of a contract for the sale of real estate, the ordering party must establish that 1) a valid contract exists, 2) the seller was able and willing to perform her contractual obligations, and 3) the balance of equity is in the seller's favor.[44] Specific performance will not be granted to a party who is in default of a material obligation

---

[39] D. I. 20 (The Court ordered the Defendant to file a response within 20 days or the Motion for Default Judgment would be granted).

[40] D. I. 21.

[41] D. I. 25; D. I. 30.

[42] *In re Osborn ex rel. Osborn v. Kemp*, 2009 WL 2586783, at *5 (Del. Ch. Aug. 20, 2009) *aff'd* 991 A.2d 1153 (Del. 2010) ("The burden of persuasion on a claim for specific performance is higher than the preponderance of the evidence: entitlement to specific performance must be proved by clear and convincing evidence.").

[43] *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002) (quoting 29 Am. Jur.2d *Evidence* § 157 (1994)).

[44] *Morton v. Rogers*, 2018 WL 1023163, at *3 (Del. Ch. Feb. 22, 2018), *adopted*, (Del. Ch. 2018).

under the contract, unless that party is excused from performance of that obligation.[45]

## A. A valid contract exists between the parties.

For a valid contract to exist, the parties must intend to be bound by the agreement, the terms must be sufficiently definite, and they must exchange legal consideration.[46] I find a valid contract existed because the parties signed a sales agreement with defined payment terms, and the Buyer made a $5,000.00 deposit as specified by the Agreement. At trial, the Buyer did not dispute the existence of a valid contract, but rather argues that his performance under the contract should be excused because of the incorrect condominium association fee and the Seller's outstanding balance owed to the condominium association. In determining whether the Buyer's arguments are valid, I look at whether these issues were material terms of the agreement.

### 1. The condominium association fee is not a material term of the agreement nor was the Agreement conditioned on the condominium association fee.

The material terms in a contract for the sale of real estate are the "price, date of settlement, and the property to be sold."[47] These terms also must be sufficiently

---

[45] *Word v. Johnson*, 2005 WL 2899684, at *3 (Del. Ch. Oct. 28, 2005).

[46] *Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. Mar. 21, 2006) (citation omitted).

[47] *River Enterprises, LLC v. Tamari Properties, LLC*, 2005 WL 356823, at *2 (Del. Ch. Feb. 15, 2005).

definite. "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do."[48]

The condominium association fee is not material terms to the contract as it does not relate to the price, settlement date, or the specific property to be sold. Even if it were argued that the condominium association fee is material to determine the price of the contract, the condominium association fee is not a negotiated amount between the parties and is more akin to the related costs in a real estate transaction such as real estate taxes and homeowners' insurance. These are fees owed to third parties that are outside a Seller's control.

Additionally, I agree with Seller's argument that the condominium fee is not a contingency to the agreement.[49] Absent a contingency clause that made the Agreement contingent on the condominium fee, specific performance is appropriate here.[50] Moreover, right above the signature line in the Seller's disclosure form, the Buyer acknowledged that he was "not relying upon any other information about the

---

[48] *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018).

[49] Tr. 37:16-24.

[50] *See W. Willow–Bay Court, LLC v. Robino–Bay Court Plaza, LLC*, 2007 WL 3317551 (Del. Ch. Nov. 2, 2007) (finding specific performance to be inappropriate where the contract at issue was contingent upon the seller obtaining a third-party's consent).

property."[51] Despite this, the Buyer admits he relied on the condominium association fee that was identified on the Realtor's website.

### 2. The money plaintiff owed to the condominium association is not an essential term of the agreement.[52]

At trial, Defendant argued that had he been aware of the money Plaintiff owed to her condominium association, he would not have moved forward with the agreement, or at least inquired into the nature of the money the seller owed.[53] Although the parties must agree on all of the essential terms of a transaction for the court to grant specific performance, "a court will not upset an agreement where [an] indefinite provision is not an essential term."[54] As previously noted, courts have found the essential terms of a real estate contract to be the price, date of settlement, and the property to be sold.[55]

At the time the buyer attempted to rescind the agreement there was no question about the price of the agreement, the date of settlement, or the property to

---

[51] Pl. Ex. C (Sales Agreement and Seller's Disclosures).

[52] I include an analysis of this issue in this report because it was brought up at trial. However, I don't find this argument to be credible as one of the reasons the Buyer did not complete the sale because the correspondence related to the unsuccessful sale, and subsequent negotiations to complete the sale, only ever identified the issue with the condominium association fee.

[53] Tr. 91:18-24 – 92:1-24.

[54] *River Enters., LLC v. Tamari Props., LLC*, 2005 WL 356823, at *1 (Del. Ch. Feb. 15, 2005) (internal quotations omitted).

[55] *Pharmathene, Inc. v. SIGA Techs., Inc.*, 2010 WL 4813553, at *10 (Del. Ch. Nov. 23, 2010) (cleaned up).

be sold. All of the definite terms of the agreement were clear. The Buyer's lack of knowledge of the amount of money the Seller owed to the condominium association is an indefinite term which does not prohibit specific performance of the agreement. Importantly, the Seller's debt to her condo association was not being transferred to the Buyer and thus did not affect the overall price of the contract.

### 3. The Seller acted in accordance with The Delaware Uniform Common Interest Ownership Act.

The Delaware Uniform Common Interest Ownership Act ("DUCIOA") requires the disclosure of information about a community to prospective buyers.[56] In accordance with Section 81-409 of DUCIOA, the seller of a condominium subject to DUCIOA, must provide the purchaser with "[a] statement setting forth the amount of the periodic common expense assessment and any unpaid common expense or special assessment currently due and payable from the selling unit owner."[57] This information is provided in the Resale Certificate.[58] The relevant parts of DUCIOA allow the seller to provide the information in the Resale Certificate either at the time

---

[56] *See* 25 *Del. C.* § 81-409(a) (providing a list of information a condominium owner must furnish to a new purchaser, which includes, but is not limited to, the amount of any periodic common expenses; a statement of the current number of unit owners delinquent on common expenses; whether there are any special assessments currently due; the current operating budget of the association; and a statement of unsatisfied judgments against the association).

[57] 25 *Del. C.* § 81-409(a)(2).

[58] 25 *Del. C.* § 81-409(a).

the contract is executed or after the contract is executed.[59] If it is provided after the contract is executed, a buyer has five (5) calendar days from receipt of the Resale Certificate to cancel the contract.[60]

Here, the Seller's agent provided the Resale Certificate to the Buyer after the execution of Agreement. In accordance with the statute, the Buyer had five calendar days to rescind the Agreement upon receipt of the Resale Certificate.[61] The Resale Certificate, sent to the buyer on November 9, 2022 and again on November 12, 2022, identified the amount of the condominium association fee and the seller's outstanding balance to the condominium association.[62] Even if I were to use the later date, the Defendant had until November 18, 2022 to rescind the Agreement but failed to do so. As such, he is not able to rescind the November 1, 2022 Agreement under the guise of not being aware of the condominium association fee or the money the seller owed to her condominium association.

---

[59] *Id.* 25 *Del. C.* § 81-409(a)-(b).

[60] 25 *Del. C.* § 81-409(b) (if the Resale Certificate is not provided "before execution of a contract for the purchase of a unit, the purchaser…may cancel the contract within 5 calendar days after first receiving the resale certificate.").

[61] *Id.*

[62] Tr. 27:17-24 – 28:1-4: D. I. 1 (Exhibit G).

**B.    The seller was ready, willing, and able to perform the contract.**

The party seeking specific performance of an agreement must be ready and able to perform the contract.[63] The Seller moved out of the Property and attended the closing with the outstanding check for the money she owed to the condominium association. She also signed the necessary paperwork to effectuate the sale at closing. I find the Seller has met this requirement.

**C.    The balance of equity is in the Seller's favor.**

When balancing the equities, the Court must be convinced that enforcing the contract through specific performance would cause less harm than not enforcing it.[64] Here, although the realtor's website listed the monthly condominium fees at a lesser amount, the official amount was provided to the Buyer four days after he paid the deposit to the Seller. He testified he was not sure if he reviewed the paperwork he received.[65] Because the Buyer failed to read the official resale documents related to the sale of the Property, he failed to timely raise any issues and continued on with the process, even attending the walkthrough before the scheduled closing and agreeing to postpone the original closing date. His attempt to pull out of the

---

[63] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[64] *Id.* at 1162 (holding that specific performance was the most equitable remedy after a lessee lived in a property for 20 years, made improvements, and signed a holographic real estate sales contract).

[65] Tr. 105:23-24 – 106:1-6.

Agreement days before closing caused unnecessary financial harm to the Seller. If I don't grant specific performance, Seller will be harmed to a greater degree than the Buyer. The Buyer changed his mind because he realized he would not make as much money as he expected using the Property as a rental.[66] However the Buyer's change of heart resulted in the Seller losing out on another offer to purchase the Property and having the carrying the costs on two homes. When balancing the equities, the harm is in the Seller's favor.

## III. CONCLUSION

For the foregoing reasons, I conclude that the November 1, 2022, Agreement is binding and should be enforced for the sale of the Property, and recommend that the case be resolved in the Plaintiff's favor. The parties are to execute the required paperwork to finalize the sale of the Property within 60 days of the date of this Order. If the parties need additional time, a status report shall be filed with the Court providing an update on the execution of the necessary paperwork to complete the sale. Plaintiff's request for fees associated with storage are denied as there was no evidence presented at trial that Plaintiff incurred storage costs outside of the costs associated with waiting until her new home was available in January. Plaintiff is

---

[66] Tr. 91:8-9.

14

awarded costs associated with filing this lawsuit and shall provide supplemental documentation regarding those costs within 30 days.

This is a final report under Court of Chancery Rules 143 and 144. Exceptions may be taken within eleven days of the date hereof.[67]

---

[67] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").